**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Carrie Harkless, et al., | ) | CASE NO. 1:06 CV 2284 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| J. Kenneth Blackwell, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |


<u>Introduction</u>

This matter is before the Court upon defendant Barbara Riley's Motion to Dismiss (Doc. 4) and defendant J. Kenneth Blackwell's Motion to Dismiss (Doc. 6).  This case arises under Section 7 of the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-5 (NVRA).  For the following reasons, both motions are GRANTED.

<u>Facts</u>

Plaintiffs, Carrie Harkless, Tameca Mardis and Association of Community Organizations for Reform Now (ACORN) (collectively hereafter, plaintiffs), filed this Complaint against defendants, J. Kenneth Blackwell (in his official capacity as Secretary of

1

State) and Barbara Riley (in her official capacity as Director of the Department of Job and Family Services).

The Complaint alleges the following.

Carrie Harkless is an Ohio citizen who receives Food Stamps, Medicaid and cash assistance through Ohio Works First, all of which are administered by the state Department of Job and Family Services (DJFS).  In the past, Harkless has received benefits through the Special Supplemental Nutrition Program for Women, Infants and Children (WIC).  Her daughter currently receives those benefits.  Harkless was previously registered to vote in Ohio, but has since moved and has not changed her voter registration address.  She has not been offered the opportunity to register to vote or change her voter registration address on any of her visits to the DJFS.

Tameca Mardis is an Ohio citizen who receives Food Stamps and Medicaid  assistance which are administered by the DJFS.  She meets all of the qualifications to register to vote in Ohio but is not registered to vote and has not been offered the opportunity to register to vote on any of her visits to the DJFS.

ACORN, consisting of more than 175,000 member families, is a non-profit organization incorporated in Louisiana, with offices in Ohio.   It is the nation's largest community organization of low and moderate income families, working together for social justice and stronger communities.

J. Kenneth Blackwell is the Ohio Secretary of State and the chief elections official, responsible for overseeing the elections process in Ohio.  Barbara Riley is the Ohio Director of DJFS, the state agency which administers the following public assistance programs subject

2

to the requirements of NVRA:  Food Stamps; Medicaid; Ohio Works First; the Prevention,

Retention and Contingency Program; and Disability Financial Assistance.

Section 7 of the NVRA mandates that all offices in a state that provide public

assistance must distribute voter registration application forms, assist applicants in completing

the forms, and accept completed voter registration application forms.  Section 7 also requires

all public assistance offices to distribute voter registration materials with each application,

recertification, renewal, or change of address relating to an applicant's receipt of public

assistance.  The public assistance agencies must also inquire of every applicant, in writing,

whether he would like to register to vote or change his voter registration address and explain

to every applicant that the decision whether to register to vote will not affect his eligibility for

benefits or the amount of benefits available.

Ohio has failed to offer voter registration to public assistance clients.   Pursuant to the

NVRA, Ohio has designated Blackwell, as Secretary of State, as the chief election officer of

the state.  The Ohio legislature has enacted statutes implementing the NVRA.   Under the

statutes, the DJFS is the designated agency that is required by the NVRA to implement a

voter registration program.  Each DJFS office is required to follow the program prescribed by

the Ohio Secretary of State to make voter registration available to its clients.

There is widespread ongoing noncompliance with the requirements of Section 7 at the

state's DJFS offices.

The Secretary of State has limited his activities to the maintenance of a toll-free

number that county DJFS offices may call to receive more voter registration application

forms when they run out.  Nor does the Secretary of State enforce any obligations by the

county offices to comply with the NVRA requirement or take other action in its oversight role to enforce compliance.  For instance, it does not provide ongoing training to DJFS offices on voter registration; it does not require each DJFS office to report which employee is the designated voter registration official; it does not maintain a listing of the designated voter registration officials; it does not monitor whether the required signage is in fact posted in each DJFS office; it does not require each DJFS office to report the number of voter registration applications processed by each office in absolute number, as a percentage of applicants, or as a percentage of applicants who are not registered to vote; and it does not require each DJFS office to maintain the NVRA-mandated declination statements.

Defendants have failed to monitor NVRA compliance by DJFS offices or enforce the mandates of Section 7 as evidenced by the following.

Spot checks of DJFS offices in the counties of Lorain, Franklin, Delaware, Lake, Mahoning and Cuyahoga, performed in October and November 2005, revealed unavailability of voter application forms at any offices except the Mahoning County office.  At the latter, the intake clerk was unaware that voter registration application forms were available and the forms were "buried on a shelf in a remote corner of the room."

In late 2005, ACORN conducted a survey of individuals leaving DJFS offices.  Out of 103 people interviewed who had gone to DJFS for transactions covered under the NVRA, three reported being offered a form asking them whether they wanted to register to vote.

Small county DJFS offices in Ohio collected more voter registration application forms than highly populated counties, although the latter have a higher percentage of persons below the poverty line.

DJFS offices in ten Ohio counties registered no voters during the 2002-2004 reporting period;  DJFS offices in 17 other Ohio counties collected fewer than 10 voter registrations; and DJFS offices in 32 additional Ohio counties submitted fewer than 100 registrations during this period.

Statewide, DJFS offices processed approximately 4.7 million applications and/or recertifications for Food Stamps, but processed less than one half of one percent of that number of voter registration application forms.

On February 23, 2006, the Greater Cleveland Voter Coalition sent a letter to Blackwell outlining the state's failure to comply with Section 7 of the NVRA and requesting steps be taken to bring Ohio into compliance.

On May 12, 2006, ACORN sent a letter to Blackwell, pursuant to the NVRA, to "provide written notice of the violation to the chief election official of the State."

On May 26, 2006, the Secretary of State's office responded by letter that NVRA compliance was not its responsibility and suggested that compliance with the NVRA was unnecessary due to Ohio's relatively high voter registration rate.

ACORN again wrote to Blackwell on July 17, 2006, offering to meet with him to address steps Ohio could take to ensure NVRA compliance.  Blackwell did not respond.

Since 2004, Harkless has been the recipient of public benefit programs administered by the DJFS and covered by the NVRA.  Despite her numerous visits to the DJFS offices since 2004, she has never been offered the opportunity to register to vote or to change her voter registration address, or been advised that she could obtain voter registration application or change of address forms and register to vote or change her voter registration address at the

5

DJFS office.  Mardis, who has received applicable public benefits since 2001, has similarly never been offered the opportunity to register to vote at the DJFS office.

The Complaint sets forth one claim for relief:  Violation of Section 7 of the NVRA, based on defendants' failure to provide the voter information and registration required by Section 7.

Plaintiffs seek declaratory and injunctive relief to redress the alleged ongoing violations.

**Standard of Review**

When considering a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687 (6th Cir. 1999).  The complaint is only to be dismissed if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41 (1957), *Hammond v. Baldwin,* 866 F.2d 172 (6th Cir. 1989).   However, the complaint must set forth "more than the bare assertion of legal conclusions.  *In Re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988).

A motion Federal Rule of Civil Procedure 12(b)(1) this rule asserts that the court lacks subject matter jurisdiction.  In *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996) (citations omitted), the court stated:

> When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  In addition, the district court is

empowered to resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction.

**Discussion**

**(1) standing**

Both defendants argue that ACORN lacks standing to bring this Complaint.  For the following reasons, this Court agrees.

The Sixth Circuit has reiterated,

In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must show: (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Sandusky County Democratic Party v. Blackwell,* 387 F.3d 565, 573 (6th Cir. 2004) (citations omitted).

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Id.* (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

"A mere interest in a problem is not, however, sufficient to confer standing upon an organization."  *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, (6th Cir. 1995) (citing *Sierra Club v. Morton*, 405 U.S. 727  (1972) ). Rather, the organization "must establish that its ability to further its goals has been 'perceptively

impaired' so as to constitute far more than simply a setback to the organization's abstract social interests." *Id*. (citing *Havens Realty Corp. v. Coleman*,102 S.Ct. 1114 (1982) )

ACORN asserts the allegations of the Complaint easily demonstrate that it has standing to sue on its own behalf.  ACORN contends that it has suffered an injury in fact in that it has expended thousands of dollars each year, as well as staff and volunteer hours, on voter registration efforts in Ohio outside DJFS offices.  The injury is traceable to defendants' action because the expenditures would have been unnecessary but for defendants' failure to comply with Section 7 of the NVRA.  It is likely that the injury will be redressed by a favorable decision because defendants' compliance with Section 7 of the NVRA will obviate the need for ACORN's voter registration drives outside the public assistance agencies.

While plaintiffs allege that their efforts would have been "unnecessary" absent defendants' noncompliance with the NVRA, the law requires that plaintiffs allege that ACORN  would not have spent those resources if defendants had not violated the NVRA.  *See ACORN v. Fowler,* 178 F.3d 350 (5th Cir. 1999), where the court stated that the organization's voter registration activities that likely would have been conducted anyway were not sufficient to confer standing to sue on its own behalf.  Plaintiffs allege elsewhere in their Complaint that ACORN regularly conducts voter registration drives outside county DJFS offices.  As defendant Riley asserts, "It stands to reason that ACORN would still conduct registration drives outside of County Departments, where ACORN would have access to a number of low and moderate income individuals, in order to convince those people to join ACORN and/or register to vote."  (Doc. 14 at 4).

For this reason, ACORN does not have standing to sue on its own behalf.

8

ACORN further asserts that it has standing to bring this action on behalf of its members because it meets the three criteria, set forth above, for associational standing.

First, ACORN asserts that its members would otherwise have standing to sue in their own right because construing the Complaint's allegations in their favor, it is alleged that unregistered ACORN members have not been offered the right to register to vote in violation of Section 7 of the NVRA.   In particular, ACORN points to paragraphs 37 and 38 of the Complaint which allege:

> **37.**  As a result of Ohio's continuing failure to ensure implementation of Section 7 of the NVRA at public assistance agencies, persons receiving public assistance are not being offered the opportunity to register to vote that federal law requires.
>
> **38.**  As a means of building stronger communities, ACORN has been a strong advocate for voter participation.  More registered voters in a community served by ACORN means that ACORN can encourage more people to vote on election day and generate a higher turnout of voters, all of which strengthens the community.  Members of ACORN who are registered to vote have an interest in other members of their community being registered to vote.  As an organization devoted to organizing low- and moderate- income families, many of ACORN's members receive public assistance and should be offered the opportunity to register to vote and/or to change their voter registration address during visits to DJFS offices to apply and/or recertify their eligibility for public assistance.  And, although ACORN encourages its members to register to vote, some of them are unregistered.

Second, ACORN asserts that the interests at stake are germane to its purpose.  It points out that the Complaint alleges that ACORN is the nation's largest community organization of low and moderate income families, working together for social justice and stronger communities.  It expends significant resources in Ohio conducting voter registration drives.  ACORN asserts that its interest in voter registration of low and moderate income citizens "is far from a passing interest" in that voter participation is an important part of accomplishing its goals of social justice and stronger communities.  ACORN also points out

9

that the Complaint alleges, "ACORN members participate in local meetings, actively work on public policy campaigns and elect their own leaders from their neighborhoods."  (Compl. ¶ 7)

Third, ACORN asserts that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  Defendants point out that neither Harkless nor Mardis are alleged to be members of ACORN.  ACORN asserts that the lawsuit does not require the participation of its members because only defendants' conduct and the conduct of the DJFS offices is at issue, ACORN only seeks declaratory and injunctive relief and it does not seek any legal or equitable relief that it individually tailored to any particular members.  "The individual participation of an organization's members is not normally necessary when an association seeks prospective or injunctive relief for its members." *Sandusky County Democratic Party,* 387 F.3d at 574 (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996).

This Court agrees with defendants' argument that plaintiffs have failed to allege anything except "a setback to its abstract social interests."  The allegations asserted in paragraph 38 of the Complaint, set forth above, amount only to a perceived setback to ACORN's interests.  Nor have plaintiffs alleged facts demonstrating that any of ACORN's members have suffered, or will suffer, a concrete, actual injury traceable to defendants' alleged violations of the NVRA.  *See Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell,* 467 F.3d 999 (6th Cir. 2006) (There is no associational standing where there is no showing that the members suffered or would imminently suffer a concrete, actual injury, traceable to enforcement of the voter identification laws.)  As defendants assert, the fact that many ACORN members receive

10

public assistance and that some ACORN members have declined to register to vote does not equate to an allegation that any ACORN member has been harmed by a county department's failure to offer registration materials.

Thus, plaintiffs have not established associational standing.

For these reasons, plaintiffs lack standing to bring this action.

**(2) lack of notice**

Both defendants also argue that neither Harkless nor Mardis have followed the necessary prerequisites prior to filing a lawsuit under the NVRA and their claims should be dismissed.

"[U]nder 42 U.S.C. § 1973gg-9(b), the [NVRA] establishes a private right of action for individuals aggrieved by a violation, who meet the  [NVRA's] notice requirement. *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997).  That section provides:

**(b) Private right of action**

(1) A person who is aggrieved by a violation of this subchapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

11

42 U.S.C.. § 1973gg-9(b). While ACORN sent two letters to Blackwell, neither Harkless nor Mardis provided individual notice of an NVRA violation.  Nonetheless, the Sixth Circuit has determined that notice sent by ACORN of the same NVRA violation alleged by the individual plaintiffs satisfies the notice requirement.  *Miller,* 129 F.3d at 838 ("The language and legislative history of 42 U.S.C.. § 1973gg-9(b) indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the [NVRA] an opportunity to attempt compliance before facing litigation. ... [R]equiring these plaintiffs to file individual notice where [the state] had already ignored ACORN's actual notice amounts to requiring performance of futile acts.")

Dismissal of the claims asserted by Harkless and Mardis is not warranted on this ground.

### (3) whether Blackwell is a proper party

Assuming there is standing, Blackwell argues that he is not a proper party defendant in this litigation because under Ohio law, the power of implementing the NVRA provisions regarding voter registration of those receiving public assistance lies with the local DJFS offices pursuant to Ohio Revised Code (O.R.C.) § 329.051 and Ohio Administrative Code (O.A.C.) § 5101:1-2-15 and the Secretary of State is not responsible for the failings of these local offices.  As such, Blackwell asserts, the fact that plaintiffs allege that counties are not complying with their duties under the law is insufficient to state a claim against the Secretary of State.  For the following reasons, this Court agrees.

Under the NVRA, Congress has imposed upon the states certain statutory requirements for the administration of federal elections.  42 U.S.C. § 1973gg *et seq.*  In Ohio,

provisions of the NVRA were incorporated into state law. O.R.C. § 3501.04 designates "[t]he secretary of state [as] the chief election officer of the state."O.R.C. § 3501.05 outlines the duties of the Secretary of State:

> **(R)** Prescribe a general program for registering voters or updating voter registration information, such as name and residence changes, at designated agencies, the offices of deputy registrars of motor vehicles, public high schools and vocational schools, public libraries, and the offices of county treasurers, and prescribe a program of distribution of voter registration forms through those agencies, the offices of the registrar and deputy registrars of motor vehicles, public high schools and vocational schools, public libraries, and the offices of county treasurers;

> **(S)** To the extent feasible, provide copies, at no cost and upon request, of the voter registration form in post offices in this state;

> **(T)** Adopt rules pursuant to section 111.15 of the Revised Code for the purpose of implementing the program for registering voters at designated agencies and the offices of the registrar and deputy registrars of motor vehicles consistent with this chapter;

In accordance with his duties under the statute, the Secretary of State has adopted administrative rules detailing agencies' duties under the NVRA.  To this end, Blackwell has prescribed a general program for registering voters and prescribed a program for distribution of voter registration forms through such agencies; he has designated an employee to be responsible for voter registration and training; and he has adopted rules to implement the program for registering voters at designated agencies.  *See* O.A.C. § 111-10-01, *et seq.*  The Secretary of State also created a training program for the designated agencies for the purpose of training them relative to their responsibilities under the statute.  (See Compl. Ex. C)

Additionally, O.R.C. § 3503.10 places specific duties on designated agencies:

> **(A)** Each designated agency shall designate one person within that agency to serve as coordinator for the voter registration program within the agency and its departments, divisions, and programs. The designated person shall be trained under a program designed by the secretary of state and shall be responsible for administering all aspects of the voter registration program for that agency as prescribed by the secretary of

13

state. The designated person shall receive no additional compensation for performing such duties.

O.R.C. § 329.051 outlines the duties of the county DJFS offices, placing the duty to provide voter registration forms to those receiving public assistance on the county DJFS offices:

The county [DJFS] shall make voter registration applications as prescribed by the secretary of state under section 3503.10 of the Revised Code available to persons who are applying for, receiving assistance from, or participating in any of the following...

Under the Ohio Administrative Code, the designated agency, such as the county DJFS office, must implement a plan for registering voters in accordance with the NVRA:

The program for registering voters at designated agencies ... shall be implemented by each such agency in accordance with a voter registration assistance plan adopted by each such agency and filed with and approved by the secretary of state. These rules establish content and format requirements for designated agencies to follow in preparing a voter registration assistance plan specifying the resources and locations at which such agency will provide voter registration opportunities.

O.A.C. 111-10-01. More specifically, O.A.C. § 5101:1-2-15 provides that the county DJFS offices have a duty to implement procedures designed to comply with the NVRA, and specifies their obligations:

**5101:1-2-15 Voter registration requirement**

**(A)** The National Voter Registration Act of 1993 (NVRA), Public Law 103-31, requires that individuals be given the opportunity to register to vote (or to change their voter registration address) in elections for federal office when applying for or receiving services or assistance at any office in the state that provides public assistance. The purpose of the NVRA is to establish procedures that will increase the number of eligible citizens who register to vote in elections for federal office. Public Law 103-31 requires each state to provide voter registration services at designated government agencies.

**(B)** Amended Substitute Senate Bill 300 (1/95) was enacted by the 120th General Assembly to require certain state agencies to register each person who is an eligible elector and to revise the conditions under which an elector can change his residence

14

and name. Registration activities entail voter registration assistance for federal, state, and local elections. In accordance with section 3503.10 of the Revised Code, the secretary of state shall prescribe the general program for registering voters or updating voter registration information. The following paragraphs of this rule delineate the requirements established by the secretary of state.

**(C)** CDJFS voter registration

(1) In accordance with Amended Substitute Senate Bill 300, each CDJFS shall provide voter registration applications and assistance in the registration of persons qualified to register to vote.

(2) The following forms and services shall be made available to all applicants/participants of public assistance programs (OWF, PRC, DFA, and food stamps) with every application, reapplication, or change of address: ...

Relying on *United States v. Missouri,* 2006 WL 1446356 (W.D.Mo. May 23, 2006), Blackwell asserts that despite his designation as chief elections officer, he is not responsible for the failures of county employees to abide by the provisions of the NVRA.  This Court agrees.

In *Missouri*, the Government brought suit seeking, in large part, an order requiring Missouri, and specifically the Secretary of State, to enforce the NVRA and the corresponding Missouri statutes against local election authorities.  The court held that despite the fact that, pursuant to the NVRA, Missouri has designated the Secretary of State as the chief election official to coordinate NVRA responsibilities for Missouri, the Secretary of State was not responsible for the enforcement of the NVRA against local election authorities. The court noted that elections in Missouri are actually conducted locally by 116 local election authorities, 114 of which are elected county officials.  The court stated,

Nor does it appear that the NVRA ever contemplated that the Secretary of State would have NVRA enforcement authority because the statute specifically says that the designated chief state election official is 'responsible for coordination of state

15

responsibilities under [the NVRA].' *See* 42 U.S.C. § 1973gg-8. Coordination means 'harmonious adjustment or interaction.' The American Heritage Dictionary of the English Language (4th ed.2000). In contrast, 'enforcement' means to 'compel observance or obedience to.' *Id* . Force and harmonious adjustment are incompatible terms. The decision of Congress to make the United States Government shoulder the burden of enforcing the NVRA also makes sense because the NVRA gives no money to Missouri for the cost of complying with the NVRA, even though the NVRA relates to federal elections, not state elections.

Thus, because neither Missouri State law nor the NVRA gave the Secretary of State enforcement authority, summary judgment was warranted on those claims seeking to hold the Secretary of State responsible for the enforcement of the NVRA against local election authorities.

As Blackwell asserts, because Ohio has passed laws (discussed above) that clearly impose the duties at issue here upon the local DJFS offices, the Secretary of State cannot be held liable for the failings of these agencies, and because Blackwell has fulfilled his responsibilities under the NVRA and Ohio law, plaintiffs have failed to state a claim against him.

Plaintiffs assert that Blackwell is a proper party defendant because he is responsible for enforcing Ohio's elections laws, including Ohio's laws implementing the NVRA. Plaintiffs contend that Blackwell has obligations and responsibilities for enforcing compliance with the NVRA, namely those set forth above in O.R.C. § 3501.05(R), and those

delineated in § 3503.10(A), (F) and (I)[1], which the Complaint alleges Blackwell has failed to fulfill:

### 3503.10 Voter registration through designated agencies

**(A)** Each designated agency shall designate one person within that agency to serve as coordinator for the voter registration program within the agency and its departments, divisions, and programs. The designated person shall be trained under a program designed by the secretary of state and shall be responsible for administering all aspects of the voter registration program for that agency as prescribed by the secretary of state. The designated person shall receive no additional compensation for performing such duties.

**(F)** The secretary of state shall prepare and transmit written instructions on the implementation of the voter registration program within each designated agency, public high school and vocational school, public library, and office of a county treasurer. The instructions shall include directions as follows: ...

**(I)** The secretary of state shall prepare and cause to be displayed in a prominent location in each designated agency a notice that identifies the person designated to assist with voter registration, the nature of that person's duties, and where and when that person is available for assisting in the registration of voters.

A designated agency may furnish additional supplies and services to disseminate information to increase public awareness of the existence of a person designated to assist with voter registration in every designated agency.

Finally, plaintiffs contend that Blackwell has the power to enforce the administration of Ohio's elections laws in all the counties under O.R.C. § 3501.05:

**(N)(1)** ... investigate the administration of election laws, frauds, and irregularities in elections in any county, and report violations of election laws to the attorney general or prosecuting attorney, or both, for prosecution;

---

[1]    Plaintiffs point out that Blackwell admitted in a brief filed in *Project Vote, et al. v. Blackwell, et al.,* No. 1:06 CV 1628 (N.D. Ohio) (J. O'Malley) that he is responsible, under O.R.C. § 3503.10(I), "for preparing and requiring the designated agency to display in a prominent location a notice that identifies the person designated to assist with registrations, the person's duties, and when that person is available to assist with voter registration duties."  (Doc. 10 Ex. 1)

17

...

**(AA)** ...In the performance of the secretary of state's duties as the chief election officer, the secretary of state may administer oaths, issue subpoenas, summon witnesses, compel the production of books, papers, records, and other evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of the election laws.

While Blackwell, as Secretary of State, however, has the power to issue directives and advisories to the local county boards of elections as to the proper methods of conducting elections, the Ohio Revised Code does not give the Secretary of State the power to enforce compliance of Ohio's NVRA laws against a local DJFS.

Moreover, this Court disagrees with plaintiffs that this case is akin to *United States v. New York*, 255 F.Supp.2d 73 (E.D.N.Y.2003).  In *New York*, the district court found that two state public assistance agencies, which delegated their NVRA responsibilities to local agencies, were responsible for ensuring that their district offices complied with NVRA. The court stated, " [The state agencies] correctly state that the NVRA does not explicitly require that state agencies ensure NVRA compliance by county or city-run district offices. It matters not. It would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies." *Id.* at 79.

Plaintiffs assert that the same is true here where the NVRA requires Ohio to designate a state official as the chief election official to be responsible for overseeing Ohio's implementation of the NVRA.  As Blackwell has been designated as such, he cannot "shed" these responsibilities by placing the blame on county agencies.

18

*New York* is distinguishable because that case made clear that New York law granted

the State control over the local offices:

> This principle of dominant state accountability is embraced by New York State judicial precedents as well. As expressed by the New York Court of Appeals, in holding the [State public assistance agency] accountable for attorneys fees for the misdeeds of New York City's [public assistance agency] in wrongfully denying benefits under the AFDC program: 'Local commissioners act on behalf of and as agents of the State ... [E]ach is a part of and the local arm of the single State administrative agency.' ...
>
> With regard to the NVRA, the principle of State agency supervisory responsibility and accountability is reflected in the State's legislative command that State designated VRAs, such as [the State public assistance agencies], must take 'all actions which are necessary and proper for the implementation of [the NVRA],' and the requirement in that regard that each State VRA designate a 'voter registration coordinator' to be 'responsible for the voter registration program in such agency.' N.Y. Elec. Law § 5-211(15). As noted, [the State public assistance agencies] have indeed taken actions consistent with their responsibilities to ensure compliance by their local offices with the NVRA by the issuance of Administrative Directives ... and Program Instructions ... Moreover, as also noted, the [State Board of Elections] has expressly recognized that 'implementation and monitoring of participating site [NVRA] compliance rests with the ... state agencies .... [and] efforts to ensure day-to-day compliance [with NVRA], if necessary, are performed by the designated [State] agency coordinator.' "

*Id.* (internal citations omitted).

Unlike New York, under Ohio law, county DJFS offices are local governmental

offices, with the director of each county DJFS office appointed by the board of county

commissioners, serving at the pleasure of the commissioners and overseeing a budget

approved by the commissioners.  O.R.C. §§ 329.01 and 329.02 provide in relevant part:

**329.01 County department of job and family services; director, assistants, bonds**

In each county there shall be a county department of job and family services ...  The department shall consist of a county director of job and family services appointed by the board of county commissioners ...

19

**329.02 Powers and duties of director; civil service status of employees and director; coordination of operations**

Under the control and direction of the board of county commissioners, the county director of job and family services shall have full charge of the county department of job and family services. The director shall prepare the annual budget estimate of the department and submit it to the board of county commissioners. ... The director, with the approval of the board of county commissioners, shall appoint all necessary assistants and superintendents of institutions under the jurisdiction of the department, and all other employees of the department, excepting that the superintendent of each such institution shall appoint all employees therein and only the board of county commissioners may appoint administrators under section 329.021 of the Revised Code. ...

Each director appointed on or after the effective date of this amendment shall be in the unclassified civil service and serve at the pleasure of the board of county commissioners. ...

The board of county commissioners, except as provided in this chapter, may provide by resolution for the coordination of the operations of the department and those of any county institution whose board or managing officer is appointed by the board of county commissioners.

The board of county commissioners may enter into a written contract with a county director of job and family services specifying terms and conditions of the director's employment. ...

In *United States v. Missouri*, *supra,* that court also recognized the difference between New York and Missouri law which rendered different results.  The court noted that in New York,

the state had control over the local offices which administered the state's child welfare and elderly programs. That is not the case in Missouri as the 116 local election authorities in Missouri are in no way subordinate or accountable to the Secretary of State. The 116 local election authorities in Missouri are not employees of the Secretary of State's office nor do they answer to the directives of that office. Almost all of them are independently elected public officials.

*Id.* at * 7.

20

Plaintiffs argue that unlike Missouri's Secretary of State, Ohio's Secretary of State has the authority and the duty to enforce Ohio's NVRA's implementation statutes. The court stated in *Missouri,* "As for Missouri's statutory program to implement the terms of the NVRA, the Secretary of State was not given any authority by the Missouri legislature to enforce those statutes." *Id.* at *7. In contrast, plaintiffs assert, Ohio's statutes implementing Section 7 of the NVRA are clearly election laws and Blackwell, as chief elections officer, is obliged to enforce them with the powers enumerated in O.R.C. § 3501.05. As stated earlier, however, the employees of each county DJFS office are not employees of the Secretary of State, and, unlike county boards of elections, Ohio law does not give the Secretary of State the power to issue directives and advisories to county DJFS offices.

For these reasons, Blackwell is not a proper party herein.

**(4) liability of Riley**

Assuming there is standing, Riley argues that as Ohio Director of the DJFS, she cannot be held liable for the county departments' alleged violations of the NVRA because Ohio's statutory scheme implementing the NVRA does not give authority to the Director of the Ohio DJFS to enforce these statutes against the county departments.[2]

---

[2]     Riley also points out that the NVRA provides a right of enforcement to only two categories of plaintiffs: the United States Government and "a person who is aggrieved by a violation of [the NVRA]." 42 U.S.C. §§ 1973gg-9(a) and (b). Director Riley, who is sued in her official capacity as Ohio Director of the DJFS, is not an "aggrieved person" nor the United States Government. Riley points to the reasoning of *United States v. Missouri,* "The decision of Congress to make the United States Government shoulder the burden of enforcing the NVRA... makes sense because the NVRA gives no money [to the state] for the cost of complying with the NVRA, even though the NVRA relates to federal elections, not state elections." *Id.* at *6.

21

Plaintiffs assert that the ability to enforce NVRA compliance comes with Riley's

duties as director of the state DJFS:

### 5101.24 Corrective actions against county family services agencies

(B) Regardless of whether a family services duty is performed by a county family services agency ...  the department of job and family services may take action under division (C) of this section against the responsible entity if the department determines any of the following are the case:

> (3) A requirement for the family services duty established by the department or any of the following is not complied with: a federal or state law ...

(C) The department may take one or more of the following actions against the responsible entity...

> (1) Require the responsible entity to comply with a corrective action plan pursuant to a time schedule specified by the department...

> (2) Require the responsible entity to comply with a corrective action plan pursuant to a time schedule specified by the department...

> ***

> (4) Impose an administrative sanction issued by the department against the responsible entity...

> (5) Perform, or contract with a government or private entity for the entity to perform, the family services duty until the department is satisfied that the responsible entity ensures that the duty will be performed satisfactorily...

> (6) Request that the attorney general bring mandamus proceedings to compel the responsible entity to take or cease the action that causes division (B)(1), (2), (3), or (4) of this section to apply...

22

Riley asserts, however, that while state law designates the DJFS and all of the county

departments of job and family services as mandatory voter registration agencies (O.R.C. §§

3501.01(X)[3] and 329.051[4]), O.R.C. § 3503.10 (L) prevents the Ohio DJFS from administering

NVRA voter registration provisions in local county department offices unless required to do

so:

> **(L)** The department of job and family services and its departments, divisions, and programs shall limit administration of the aspects of the voter registration program for the department to the requirements prescribed by the secretary of state and the requirements of this section and the National Voter Registration Act of 1993.

Since Ohio law does not *require* Ohio DJFS to administer the NVRA at the local level, it

cannot have any NVRA responsibilities over county departments.  This Court agrees.  O.R.C.

§ 5101.24 only gives permissive authority to the Ohio DJFS to oversee the county

departments if they are not complying with a "family services" duty.  Even construing a voter

registration duty as being a family services duty, that statute does not impose a requirement.

As discussed above, in Ohio, the director of a county department of job and family

services has complete charge of that agency.  O.R.C. §329.02.  That director is appointed by

---

[3]    O.R.C. § 3501.01(X) states in part, " 'Designated agency' means an office or agency in the state that provides public assistance or that provides state-funded programs primarily engaged in providing services to persons with disabilities and that is required by the National Voter Registration Act of 1993 to implement a program designed and administered by the secretary of state for registering voters, or any other public or government office or agency that implements a program designed and administered by the secretary of state for registering voters, including the department of job and family services, ...

[4]    Set forth above.

23

the board of county commissioners.  O.R.C. §329.01.  Further, the employees of that county agency are in a classified service.  The director of that county agency establishes the qualifications of persons to be employed and the classifications and rates of compensation of county department employees, and Ohio DJFS is required to cooperate with the county director in doing so.   O.R.C. §329.022.

For these reasons, because no NVRA section requires the director of a state's public assistance agency to ensure compliance by county departments, and because the Ohio statutes do not require the Ohio DJFS to ensure that the county departments comply with the NVRA, Riley is not a proper party.

**<u>Conclusion</u>**

For the foregoing reasons, defendant Barbara Riley's Motion to Dismiss is granted and defendant J. Kenneth Blackwell's Motion to Dismiss is granted.

IT IS SO ORDERED.


/s/Patricia A. Gaughan____
PATRICIA A. GAUGHAN
United States District Judge

Date:   12/28/06

24